STATE v. STOKES.

Opinion delivered February 22, 1915.

1. GAME AND FISH—RIGHT OF NONRESIDENT LAND OWNER.—A nonresident of the State of Arkansas may not hunt or fish in this State, except upon lands which he owns.

2. GAME AND FISH—NONRESIDENT—OWNERSHIP OF LAND.—A deed to appellants gave them the right to hunt and fish on the land, the land to be used as a "fish and game preserve only," with reservation of

the right in the grantor to cut timber, and for a reversion to him, if the land ceased to be used as a game preserve. *Held*, the deed conveyed to appellants, who were nonresidents of the State, no interest in the land, but granted to them only the right to use the land as a fish and game preserve.

3. GAME AND FISH—NONRESIDENT—GRANT OF RIGHT TO HUNT AND FISH.— The mere grant of the privilege of hunting and fishing does not make a nonresident, to whom such privilege is granted, an owner of the land, so that he may escape the provisions of the statute in regard to nonresidents hunting in this State.

Appeal from Mississippi Circuit Court, Chickasawba District; *J. T. Coston*, Special Judge; reversed.

STATEMENT BY THE COURT.

The defendants, Jordan Stokes and others, were indicted for unlawful hunting under section 3599 of Kirby's Digest, which provides that it shall be unlawful for any person who is a non-resident of the State of Arkansas to shoot, hunt, fish or trap at any season of the year.

Section 3601 imposes a fine for a violation of the statute.

The facts are undisputed and, so far as necessary for a determination of the cause, are substantially as follows:

On the 2d day of July, 1901, the Paepcke-Leicht Lumber Company and the Chicago Mill & Lumber Company executed to W. H. Jackson and J. H. Acklin, trustees for the Big Lake Shooting Club, a deed as follows:

"Know all men by these presents: that Paepcke-Leicht Lumber Company and Chicago Mill & Lumber Company, for and in consideration of $5 to them paid by W. H. Jackson president and J. H. Acklin, secretary, as trustees for Big Lake Shooting Club, the following lands and waters lying in the County of Mississippi and State of Arkansas, towit:

"First: Beginning at point ten feet east of where the original survey of the United States Government made about the year 1834, defining the shore line of Big Lake intersects with the line between the States of Missouri and Arkansas, and near the center of section 19, township 16 north, range 10 east, running thence southwardly and always ten feet east of and parallel with the

shore line of said original survey as it meanders through sections 19, 20, 29 and 32, in said township, also through sections 5, 8, 17, 18, 19 and 30, of township 15 north, range 10 east; also through sections 25 and 36, in township 15 north, range 9 east, together with all accretions to each of said sections and fractional sections westward to the thread of Little River in Big Lake.

"Second: Beginning at a point ten feet west of where the half section line running east and west of sections 33, of township 15 north, range 9 east, intersects the shore line of Big Lake in the original survey of the United States Government, running thence southwardly and always ten feet west of and parallel with the shore line of the said survey as it meanders through said section 33, and also through sections 4 and 9, of township 14 north, range 9 east, together with all accretions to each of said sections and fractional sections, eastward to the thread of Little River in Big Lake.

"It is understood that said property is to be used as a game and fish preserve only and the conveyors herein reserve to themselves the right to cut and remove all the timber on said land; and it is a condition of this conveyance that should the Big Lake Shooting Club abandon the property or said club cease to exist, then and in that event said land shall revert to and the title thereto revest in the Paepcke-Leicht Lumber Company, or its successors.

"Witness our hands and   seals this 2d day of July, 1901."

Jordan Stokes and the other defendants are nonresidents of the State of Arkansas but are members of the Big Lake Shooting Club, an incorporated association of individuals, which owns a clubhouse near Big Lake in the Chickasawba District of Mississippi County, Arkansas.

Big Lake is a non-navigable inland body of water situated within said county and district, and it is conceded that within twelve months before the finding of

the indictments the defendants hunted on the lands embraced within the above-mentioned deed.

The case was tried before the court sitting as a jury, and from the judgment in favor of the defendants the State has duly prosecuted an appeal to this court.

*Wm. L. Moose,* Attorney General, *Jno. P. Streepey,* Assistant, and *M. P. Huddleston,* Prosecuting Attorney, for appellant.

The effect of the decisions in this State is that a nonresident may not hunt in the State, except upon lands which he owns.    73 Ark. 236; 110 Ark. 204.    The right to hunt is merely incident to the ownership of lands.    The deeds introduced convey no interest in lands. 88 Ark. 571.

*L. P. Biggs,* for appellee.

1.    Appellees owned the land and had the right to hunt.    Section 3599 Kirby's Dig., is unconstitutional insofar as it curtails and abridges property rights.    Const. U. S., Fourteenth Amendment; 73 Ark. 244.    The right to hunt is a property right under the Constitution.    11 H. of L. Cas. 621; 160 U. S. 452; 110 Ark. 206.

2.    88 Ark. 571, is not in point.    The question of a "private pond" is not involved.

HART, J., (after stating the facts).    In the case of the *State* v. *Mallory,* 73 Ark. 236, it was held that a State can not forbid a nonresident land owner taking fish and game on his own property within the State while according such privileges to resident land owners, in view of the provision of the Federal Constitution forbidding the denial of equal protection of the law and the taking of property without due process of law.    In that case the court said:

"The fullest latitude of power in the State to regulate and preserve the game for the common enjoyment is conceded, and no such private property rights therein which we hold to exist can retard or obstruct the exercise of that undoubted power.    But we have another and altogether different question to deal with in this case,

that of finding whether land owners have a right to hunt and fish upon their own lands, which is a property right, they are entitled to equal protection in the enjoyment of that right with other land owners, or whether it be destroyed by a statute passed under the guise of a police regulation to preserve the fish and game, and the right of enjoyment prohibited for the sole reason that they are non-residents of the State. It is not of the fact that appellee is excluded from enjoyment of the common right of the citizen to fish and hunt, because of his non-residence, that he may complain, but of the exclusion, by reason of his nonresidence, from such special right which he should enjoy in common with other land owners.''

Again in the case of *Lewis* v. *State,* 110 Ark. 204, the court said:

''In *State* v. *Mallory,* 73 Ark. 236, the court had under review the act approved April 24, 1903, making it unlawful for any person who is a nonresident of the State of Arkansas to hunt or fish in the State at any season of the year. We held under that act that nonresidents of the State who owned land within the State could hunt and fish on their own lands during the open season. But the act, of course, as to nonresidents of the State who are not owners of land within the State, is still in force, and they are prohibited from hunting and fishing at any season of the year. That act involves a discrimination in favor of residents of the State as against nonresidents who are not owners of land in the State. Such discrimination is a valid exercise of governmental power which the sovereign State has over the fish and game, *ferae naturae,* within its borders to protect and preserve same for the benefit of its inhabitants.''

(1-2) The effect of these decisions is that a nonresident of the State of Arkansas may not hunt in this State except upon lands which he owns. The right to hunt is merely an incident to his ownership of the lands, and we are of the opinion that the deed copied into the statement of facts does not convey any interest in the lands

to the defendants, but only grants them the right to use them as a fish and game preserve.

When the deed is construed from its four corners and especially in reference to language used in the latter part of it, it is evident that there was only an intention to grant the defendants the right to hunt and fish on the land. The deed recites that the property is to be used as a "fish and game preserve only," and that the grantors reserve to themselves the right to cut and remove all the timber on the land and that it is a condition of the conveyance that should the Big Lake Shooting Club abandon the property or the club cease to exist the land should revert to and the title thereto be revested in the grantors. We do not think the deed conveyed any interest in the land separate and apart from the right to use it as a fish and game preserve.

Under the statute above referred to, the defendants being nonresidents would not be allowed to fish and hunt on the land unless they owned it and had an interest in the land itself.

(3) In short, we hold that the mere grant of the privileges of hunting and fishing does not make a nonresident, to whom such privilege is granted, an owner of the land so that he may escape the provisions of the statute in regard to nonresidents hunting in this State.

We expressly held in the case of the *State* v. *Mallory, supra,* that the nonresident could hunt on his own land because of the fact that he owned it and it was a right he might enjoy in common with other land owners.

Deeds from other persons and corporations are set out in the transcript and other reasons assigned by the Attorney General why the judgment should be reversed, but we do not deem it necessary to consider and determine them because the record shows that the defendants hunted on the land embraced in the above described conveyance, and having held that that conveyance did not give them any title to or interest in the land, it necessarily follows that they violated the section of the statute under which they were indicted when they hunted upon the lands.

Therefore the judgment will be reversed and the cause remanded for a new trial.